## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| L. ROBERT OROS, derivatively on behalf of SPIRE GLOBAL, INC.,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>JOAN AMBLE, LEO BASOLA, THERESA CONDOR, DIRK HOKE, STEPHEN MESSER, PETE PLATZER, and WILLIAM PORTEOUS,<br><br>　　　　　　　Defendants,<br><br>　　and<br><br>SPIRE GLOBAL, INC.,<br><br>　　　　　　　Nominal Defendant. | **Jury Trial Demanded**<br><br>Case No.:  1:24-cv-2020 |

## VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

## INTRODUCTION

Plaintiff L. Robert Oros ("Plaintiff"), by and through his counsel, derivatively on behalf of Nominal Defendant Spire Global, Inc. ("Spire," "Spire Global," or the "Company"), submits this Verified Stockholder Derivative Complaint against Defendants and alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.   Plaintiff's information and belief is based upon, among other things, investigation by multiple counsel, which included, *inter alia*, review and analysis of (i) regulatory filings made by Spire Global with the United States Securities and Exchange Commission ("SEC"); (ii) press releases issued and disseminated by Spire Global; (iii) court submissions in two securities class actions against certain Company officers alleging issuance of false and misleading statements of material fact and the omission of material facts necessary to make other statements made not misleading regarding Spire Global's business, operations, and prospects (the "Securities Class Actions"); and (iv) other publicly available information concerning Spire Global.

## NATURE OF THE ACTION

1.      This is a stockholder derivative action asserted on behalf of Nominal Defendant Spire Global against certain officers and the members of the Company's Board of Directors ("Board") for the claims asserted herein between May 11, 2022, and August 27, 2024, (the "Relevant Period") to recover damages caused to the Company as described herein.

2.      Spire Global, Inc. is based in Virginia.

3.      Spire Global, Inc. is a data and analytics firm powered by satellites.

4.      Spire Global, Inc. employs its own network of versatile satellites to gather earth data in real-time using radio frequency technology and serves maritime, aviation, and meteorology industries.

5.      During the Relevant Period, the Individual Defendants (defined herein) assured investors that Spire Global, Inc. filed its financial statements in conformity with the generally accepted accounting principles ("GAAP").

6.       During the Relevant Period, the Individual Defendants assured investors that Spire Global, Inc. had adequate internal controls over financial reporting.

7.      After the market closed on August 14, 2024, Spire Global, Inc. shocked investors by announcing it would delay filing its second-quarter 2024 financial report due to an ongoing review of its accounting practices and procedures concerning revenue recognition related to certain contracts in its "Space as a Service" business segment and related internal control matters.

8.      Spire Global, Inc. revealed that the contracts under re-evaluation had generated approximately $10 to $15 million in recognized revenue annually.

9.      Spire Global, Inc. admitted that additional financial measures, including gross profit, could be impacted.

10.      In a Form NT 10-Q filed with the SEC that same day, Spire Global, Inc. disclosed that certain Space Services contracts contained embedded leases of identifiable assets and that the Company lacked adequate accounting practices and procedures for recognizing revenue related to pre-space mission activities.

11.      As a result of these deficiencies, Spire Global, Inc.'s reported revenue for certain Space Services contracts during the Relevant Period was materially overstated.

12.      Following these disclosures, Spire Global, Inc.'s stock price plummeted $3.41 per share, or 33.56%, to close at $6.75 per share on August 15, 2024, amid unusually heavy trading volume.

13.     On August 27, 2024, after market close, Spire Global, Inc. disclosed that investors should no longer rely on its financial statements filed for the quarter ending March 31, 2022.

14.     Spire Global, Inc. further revealed that it would need to restate its financial statements filed during the Relevant Period with the SEC.

15.     On this news, Spire Global, Inc.'s stock price dropped $0.12, or 2%, per share, to close at $8.07 on August 28, 2024.

16.     Throughout the Relevant Period, the Individual Defendants breached their fiduciary duties by making, or causing Spire Global, Inc. to make, a series of false and misleading statements, which failed to disclose:

    a.    Spire Global, Inc. had embedded leases of identifiable assets in certain service contracts.

    b.    Spire Global, Inc. lacked effective accounting controls and procedures to recognize revenues of pre-space mission activities.

    c.    Consequently, Spire Global, Inc. overstated its revenue for its Space as a Service business segment contracts.

    d.    Spire Global, Inc. failed to have adequate internal controls over financial reporting.

    e.    Spire Global, Inc. filed financial statements that were not prepared in conformity with GAAP, including, without limitation, principles applicable to proper revenue recognition.

    f.    Spire Global, Inc. faced the likelihood of having to restate its financial statements to remove certain previously recorded pre-space mission activity revenue from the period in which pre-space mission activities were performed under certain contracts, and instead, record that revenue over the period in which data is delivered.

    g.    As a result, Defendants' positive statements about Spire Global, Inc.'s business, operations, and prospects were materially false, misleading, and lacked a reasonable basis.

17.     As a direct and proximate result of the misconduct described herein by Individual Defendants, Spire Global, Inc. has sustained significant damages, as explained below.

## JURISDICTION AND VENUE

18.     This District Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 10(b) and 20D of the Securities Exchange Act and SEC Rule 10b-5 promulgated thereunder, as well as Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

19.     This District Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims form part of the same case or controversy.

20.     This action is not a collusive one designed to confer jurisdiction on a District Court of the United States that it would not otherwise have.

21.     This District Court has jurisdiction over each Defendant because they reside in this District or have sufficient minimum contacts with this District to render the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

22.     This District Court has personal jurisdiction over the Nominal Defendant because it is authorized to do business in this state.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participation in the wrongful acts detailed herein and violation of fiduciary duties owed to Spire Global, Inc.

24.     Venue is also proper pursuant to 28 U.S.C. § 1401 because Nominal Defendant Spire Global, Inc. could have sued the same Defendants in this District.

## PARTIES

25.     Plaintiff is a Spire Global, Inc. stockholder and has continuously held Spire Global, Inc. stock from the time of the wrongdoing alleged herein until the present.

26.     Plaintiff will fairly and adequately represent Spire Global, Inc.'s interest in this action.

27.     Nominal Defendant Spire Global, Inc. is incorporated under the laws of Delaware, and its principal executive offices are located at 8000 Towers Crescent Drive, Suite 1225, Vienna, Virginia 22182.

28.     Spire Global, Inc.'s common stock trades on the New York Stock Exchange ("NYSE") under the symbol "SPIR."

29.     Defendant Joan Amble ("Amble") has served as a member of Spire Global, Inc.'s Board since August 2022 and has been a member of its Audit Committee since at least May 2023.

30.     Defendant Leo Basola ("Basola") has served as Spire Global, Inc.'s Chief Financial Officer ("CFO") since September 2023.

31.     Defendant Theresa Condor ("Condor") has served as a member of Spire Global, Inc.'s Board since August 2021 and as Spire Global, Inc.'s Chief Operating Officer since October 2021.

32.     Defendant Dirk Hoke ("Hoke") has been a member of Spire Global, Inc.'s Board since November 2021 and as a member of the Audit Committee since at least April 2022.

33.     Thomas Krywe ("Krywe") served as Spire Global, Inc.'s CFO from December 2018 to September 2023.

34.     Defendant Stephen Messer ("Messer") has served as a member of Spire Global, Inc.'s Board since August 2021.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

35.     Defendant Jack Pearlstein ("Pearlstein") served as a member of Spire Global, Inc.'s Board from August 2021 to March 21, 2023.

36.     Defendant Peter Platzer ("Platzer") has served as President, Chief Executive Officer ("CEO"), and a member of Spire Global, Inc.'s Board since August 2021.

37.     Platzer has served as Chairperson of Spire Global, Inc.'s Board since at least April 2022.

38.     Defendant William Porteous ("Porteous") has served as a member of Spire Global, Inc.'s Board since August 2021.

39.     Porteous has served on the Audit Committee since at least April 2022 and as its Chairperson since at least May 2023.

40.     The following Defendants are hereinafter referred to as the "Individual Defendants": Amble, Basola, Condor, Hoke, Krywe, Messer, Pearlstein, Platzer, and Porteous.

41.     The following Individual Defendants are collectively referenced herein as the "Director Defendants": Amble, Condor, Hoke, Messer, Platzer, and Porteous.

42.     The following Individual Defendants are collectively referenced herein as the "Officer Defendants": Basola, Condor, Krywe, and Platzer.

43.     The following Individual Defendants are collectively referenced herein as the "Audit Committee Defendants": Amble, Hoke, and Porteous.

44.     The following Individual Defendants are collectively referenced herein as the "Securities Class Action Defendants": Basola, Krywe, and Platzer.

45.     The Individual Defendants and Nominal Defendant are collectively referenced herein as "Defendants."

## THE INDIVIDUAL DEFENDANTS OWE FIDUCIARY
## DUTIES TO THE COMPANY AND ITS STOCKHOLDERS

46.     At all times relevant to this case, the conduct of the Individual Defendants was governed by well-recognized rules to protect Spire Global, Inc. and its stockholders, the members of the public who had invested in Spire Global, Inc.

47.     Because of their positions as officers and/or directors of Spire Global, Inc. and their ability to control its business and corporate affairs, the Individual Defendants owed the Company and its stockholders the fiduciary obligations of good faith, loyalty, and candor.

48.      Because of their positions as officers and/or directors of Spire Global, Inc. and their ability to control its business and corporate affairs, the Individual Defendants were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.

49.     The Individual Defendants were and are required to act in furtherance of the best interests of Spire Global, Inc. and its stockholders to benefit all stockholders equally and not in furtherance of their personal interest or benefit.

50.     Each of Spire Global, Inc.'s directors owes to the Company and its stockholders fiduciary duties of care and loyalty, including good faith, oversight, and candor, to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets.

51.     Because of their positions of control and authority as directors and/or officers of Spire Global, Inc., the Individual Defendants were able to and did, directly and/or indirectly, exercise control over the wrongful acts alleged herein.

52.     To discharge their duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company.

53.     By virtue of such duties, the officers and directors of Spire Global, Inc. were required to do the following:

- Ensure that Spire Global, Inc. complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

- Conduct the affairs of Spire Global, Inc. in a lawful, efficient, and business-like manner to make it possible for the Company to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

- Properly and accurately inform investors and analysts as to the true financial condition of Spire Global, Inc. at any given time, make accurate statements about the Company's financial results and prospects, and ensure that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

- Remain informed as to how Spire Global, Inc. conducted its operations, and, upon notice of imprudent or unsound conditions or practices, make reasonable inquiry into the nature and cause of such conditions and practices, correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws; and

- Ensure that Spire Global, Inc. was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules, and regulations.

54.     The Individual Defendants knowingly violated their obligations as directors and officers of Spire Global, Inc., acting without good faith and consciously disregarding their duties to the Company and its stockholders despite their knowledge of the risk of serious injury to the Company.

55.     Because of their positions of control and authority, the Individual Defendants were able to exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Spire Global, Inc.

56.     The Board has adopted Spire Global, Inc.'s Code of Business Conduct and Ethics ("Code of Conduct").

57.     The Board has adopted the Code of Conduct to deter wrongdoing.

58.     The Code of Conduct imposes additional duties and responsibilities on the Director Defendants and Officer Defendants.

59.     The additional duties and responsibilities on the Director Defendants and Officer Defendants imposed by the Code of Conduct includes the following:

**A. Purpose**

Spire is committed to complying with all applicable laws and regulations ("**Laws**"), to maintaining the highest standards of ethical conduct, and to treating people with dignity, honesty, and respect.  This Code of Business Conduct and Ethics (this "**Code**") was adopted to further Spire's commitment to these values and summarizes certain of Spire's most important compliance obligations.  This Code applies to everyone who does business on behalf of Spire, including all directors, officers, and employees of Spire (who, unless otherwise specified, are collectively "**employees**"), as well as contractors, consultants, agents, brokers, distributors, or other intermediaries acting on behalf of Spire.  For purposes of this Code, "contractors" and "consultants" shall mean contractors and consultants who provide services to Spire.

This Code is intended to ensure and promote:

1.      fair and accurate financial reporting;

2.      ethical conduct and compliance with applicable laws, rules, and regulations including, without limitation, full, fair, accurate, timely, and understandable disclosure in reports and documents we file with or submit to the Securities and Exchange Commission and in our other public communications;

3.      the prompt internal reporting of violations of this Code, as set forth in this Code;

4.      honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest;

5.      a culture of honesty and accountability; and

6.      the deterrence of wrongdoing.

\*       \*       \*

**B.  Financial Reports and Other Records – Disclosure**

Employees, contractors, and consultants are responsible for the accurate and complete reporting of financial information within their respective areas of responsibility and for the timely notification to senior management of financial and non-financial information that may be material to Spire.  Spire expects all of its employees, contractors, and consultants to take this responsibility very seriously to ensure full, fair, accurate, timely, and understandable disclosure in reports and documents that Spire files with government agencies or releases to the general public.

Each employee, contractor, and consultant, to the extent involved in Spire's disclosure process, including without limitation, the Chief Executive Officer, Chief Financial Officer, and other senior employees who perform similar functions in Spire (collectively, "**Senior Financial Officers**"), must familiarize themselves with the disclosure requirements applicable to Spire as well as the business and financial operations of Spire, and must not knowingly misrepresent, or cause others to misrepresent, facts about Spire to others, whether within or outside Spire, including to Spire's independent auditors, governmental regulators, and self-regulatory organizations.

All of Spire's books, records, accounts, and financial statements must be maintained in reasonable detail, and reflect the matters to which they relate accurately, fairly, and completely.  Furthermore, all books, records, accounts, and financial statements must conform both to applicable legal requirements and to Spire's system of internal controls.  All assets of Spire must be carefully and properly accounted for.  No undisclosed or unrecorded account or fund shall be established for any purpose.  No false or misleading entries shall be made in Spire's books or records for any reason, and no disbursement of corporate funds or other corporate property shall be made without adequate supporting documentation and authorization.  Misclassification of transactions as to accounts, business units, or accounting periods is forbidden.  Each employee, contractor, and consultant bears responsibility for ensuring that they are not party to a false or misleading accounting entry.

## DIRECTOR DEFENDANTS ON THE AUDIT
## COMMITTEE OWE ADDITIONAL DUTIES

60.     The Audit Committee Charter (the "Audit Charter") places additional duties and responsibilities upon the members of the Board's Audit Committee.

61.     The Board's Audit Committee consisted of Amble, Hoke, and Porteous during the Relevant Period.

62.     Pursuant to the Audit Charter, the overarching duties of the Audit Committee and its members include the following:

**A.  Purpose**

The purpose of the Committee is to assist the Board in fulfilling its responsibilities for overseeing:

- The Company's accounting and financial reporting processes and internal controls, as well as the audit and integrity of the Company's financial statements.

*   *   *

- The design, implementation and performance of the Company's internal audit function.

- The Company's compliance with applicable law (including U.S. federal securities laws and other legal and regulatory requirements).

- The Company's policies with respect to risk assessment and risk management pertaining to the financial, accounting and tax matters of the Company.

*   *   *

**C.  Responsibilities**

*   *   *

5.      <u>Review Financial Statements</u>.  The Committee shall review and discuss the following with management, the internal auditors, if applicable, and the independent auditor, as applicable:

a.   The Company's annual audited and quarterly unaudited financial statements and annual and quarterly reports on Form 10-K and 10-Q,

including the disclosures in "Management's Discussion and Analysis of Financial Condition and Results of Operations", and recommend to the Board whether the audited financial statements and "Management's Discussion and Analysis of Financial Condition and Results of Operations" should be included in the Company's Form 10-K.

b. The results of the independent audit and the quarterly reviews of the Company's financial statements, and the independent auditor's opinion on the annual financial statements.

c. Major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles.

d. Analyses prepared by management or the independent auditor setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements.

e. The effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the Company's financial statements.

f. Any problems or difficulties the independent auditor encountered in the course of its audit work, including any restrictions on the scope of the auditor's activities or on access to requested information, and management's response.

\*        \*        \*

7.    <u>Committee Report</u>.   The Committee will prepare the report of the Committee that SEC rules require to be included in the Company's annual proxy statement.

8.    <u>Earnings Press Releases and Earnings Guidance</u>.   The Committee will review, in general, earnings press releases, and review and discuss with management and the independent auditors['] policies with respect to earnings press releases (with particular attention to any use of "pro forma" or "adjusted" non-GAAP information), financial information and earnings guidance provided to the public, analysts and ratings agencies.

9.    <u>Internal Controls</u>.    The Committee shall review and discuss with management, the internal auditors, if applicable, and the independent auditor the adequacy and effectiveness of the Company's internal controls, including any changes, significant deficiencies or material weaknesses in those controls reported by the independent auditor, the internal auditors, if applicable, or management and any special audit steps adopted or changes required in light of any material control deficiencies, the reports and certifications regarding internal control over financial reporting and any fraud, whether or not material, that involves management or other

Company employees who have a significant role in the Company's internal controls.

10. <u>Disclosure Controls and Procedures</u>.  The Committee shall review and discuss the adequacy and effectiveness of the Company's disclosure controls and procedures and the reports and certifications over disclosure controls and procedures.

12. <u>Risk Assessment and Risk Management</u>.  The Committee shall review and discuss with management, the internal auditors, if applicable, and the independent auditor the Company's major financial risk exposures and the steps management has taken to monitor and control those exposures, including the Company's guidelines and policies with respect to risk assessment and risk management pertaining to financial, accounting and tax matters.  The Committee will also review the Company's risk management framework and programs to address risks, as well as the framework by which management discusses the Company's risk profile and risk exposures with the Board and its committees.

13. <u>Legal and Regulatory Compliance</u>.  The Committee shall:

   a. Review and discuss with management, the internal auditors, if applicable, and the independent auditor (i) the overall adequacy and effectiveness of the Company's legal, regulatory and ethical compliance programs, including the Company's Code of Business Conduct and Ethics, compliance with anti-bribery and anti-corruption laws and regulations, and compliance with export control regulations and (ii) reports regarding compliance with applicable laws, regulations and internal compliance programs.

   b. Discuss with management and the independent auditor any correspondence with regulators or governmental agencies that raise material issues regarding the Company's financial statements or accounting policies.

   c. Discuss with a senior member of the Company's Legal Department any legal matters that may have a material impact on the financial statements or the Company's compliance procedures.

## D.  MEETINGS AND PROCEDURES

*     *     *

2. <u>Reporting to the Board of Directors</u>.  The Committee shall report regularly to the Board with respect to the Committee's activities and recommendations, including any significant issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with legal or regulatory requirements, the

performance of the internal audit function or the performance and independence of the Company's independent auditor, as applicable.

## **BACKGROUND**

63.     Founded in 2012, Spire Global, Inc. has positioned itself as a leader in the emerging field of space-based data collection and analysis.

64.     Spire Global, Inc. operates a proprietary constellation of multi-purpose satellites that collect real-time data about the Earth using advanced radio frequency technology.

65.     Spire Global, Inc.'s business model revolves around collecting, analyzing, and selling data gathered from its satellite network.

66.     Spire Global, Inc.'s services have applications across various industries, including: (i) Maritime (providing ship tracking, weather routing, and port operations data); (ii) Aviation (offering aircraft tracking, weather forecasting, and route optimization); and (iii) Meteorology (delivering global weather data and climate monitoring information).

67.     Spire Global, Inc. generates revenue primarily through two channels: (i) Data Solutions (selling processed data and insights to customers) and (ii) Space Services (offering space-based solutions, including satellite-as-a-service options).

68.     Spire Global, Inc. has established itself as a significant player in the satellite data industry.

69.     Spire Global, Inc.'s unique approach to data collection and its diverse applications attracted attention from investors and customers alike.

70.     As a public company, Spire Global, Inc. was required to maintain effective internal controls over financial reporting.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

71.     Effective internal controls over financial reporting includes having proper systems and procedures in place to ensure accurate financial reporting, compliance with accounting standards, and timely disclosure of material information to investors.

72.     Throughout the Relevant Period, Spire Global, Inc. issued various public statements and financial reports that painted a positive picture of the Company's operations and financial health.

73.     However, as later revealed, these statements allegedly contained material misrepresentations and omissions regarding Spire Global, Inc.'s accounting practices, particularly in relation to its Space Services contracts and revenue recognition.

74.     The situation came to a head on August 14, 2024, when Spire Global, Inc. announced a delay in filing its second-quarter 2024 financial report, leading to a significant drop in the Company's stock price and the subsequent filing of a securities class action lawsuit.

## DEFENDANTS BREACH THEIR DUTIES
## TO THE COMPANY AND ITS STOCKHOLDERS

75.     Through a series of communications, Defendants made materially false and misleading statements and failed to disclose material adverse facts about the Company's business, operations, and prospects.

76.     Specifically, Defendants failed to disclose to investors:

   a.     Spire Global, Inc. had embedded leases of identifiable assets in certain service contracts.

   b.     Spire Global, Inc. lacked effective accounting controls and procedures to recognize revenues of pre-space mission activities.

   c.     Consequently, Spire Global, Inc. overstated its revenue for its Space as a Service business segment contracts.

   d.     Spire Global, Inc. failed to have adequate internal controls over financial reporting.

e.      Spire Global, Inc. filed financial statements that were not prepared in conformity with GAAP, including, without limitation, principles applicable to proper revenue recognition.

f.      Spire Global, Inc. faced the likelihood of having to restate its financial statements to remove certain previously recorded pre-space mission activity revenue from the period in which pre-space mission activities were performed under certain contracts, and instead, record that revenue over the period in which data is delivered.

g.      As a result, Defendants' positive statements about the Company's business, operations, and prospects were materially false, misleading, and lacked a reasonable basis.

**A.      May 11, 2022: First Quarter 2022 Financial Results**

77.    On May 11, 2022, Spire Global, Inc. issued a press release announcing its first quarter 2022 financial results for the period ending March 31, 2022.  Press Release, Spire Global, Inc., Spire Global Announces Second Quarter 2022 Results (May. 11, 2022) (the "May 11, 2022, Press Release").

78.    In the May 11, 2022, Press Release, the Company stated as follows:

**First Quarter 2022 Highlights**

**Financial:**

- First quarter 2022 revenue increased 86% year over year to $18.1 million, which topped the high end of our guidance of $17.5 million, and was driven by increased adoption by existing customers and recent new customer additions.

- As of March 31, 2022, [annual recurring revenue ("ARR")] was $81.6 million, up 134% year over year, which exceeded the high end of our guidance.  Key wins in Weather and Space Services drove the $10.9 million of sequential quarter over quarter growth.

- As of March 31, 2022, Spire had 627 ARR solution customers under contract, a net increase of 29 customers from December 31, 2021, and ended the quarter on the upper end of our Q1 guidance range.

- First quarter GAAP operating loss was $20.0 million and Non-GAAP operating loss[] was better than guidance by $2.0 million at $12.8 million.  Outperformance in the quarter was the result of strong revenue flowing

through to margin and lower headcount-related spending.   As Spire continues to make investments in future growth, the focus remains on driving efficiencies in the business to reach profitability.

(Footnote omitted).

79.    In the May 11, 2022, Press Release, Defendant Platzer and Krywe are quoted as stating the following:

"The first quarter was defined by strong execution, delivering results that exceeded our expectations on the top and bottom line.  As market volatility, inflationary pressures, and supply chain constraints continue to make headlines, Spire is bringing insights to help our customers drive stability and operational efficiencies during these dynamic times," said Peter Platzer, Spire's CEO.   "Customers recognize the value of Spire data, and we have seen them expand across our data products and up the data value chain.  We look for continued growth and further customer diversity as more use cases for Spire's data become apparent."

"The first quarter was another outstanding quarter of execution that carried forward our momentum from the end of last year," said Thomas Krywe, Spire's CFO.  "We are pleased with the Q1 execution across all areas of the business along with the strong growth trajectory.  We are well positioned to deliver on our 2022 targets and continue our pursuit of profitability."

80.    On the same day, Spire Global, Inc. filed its first quarter 2022 financial report on Form 10-Q with the SEC.  Spire Global, Inc., Quarterly Report (Form 10-Q) (May 11, 2022) ("Q1 2022 Form 10-Q").

81.    The Q1 2022 Form 10-Q was signed by Defendants Platzer and Krywe.

82.    The Q1 2022 Form 10-Q also contained certifications pursuant to Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Platzer and Krywe attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

83.    The Q1 2022 Form 10-Q contained the same financial results as stated in the May 11, 2022, Press Release.

### B.     August 10, 2022: Second Quarter 2022 Financial Results

84.     On August 10, 2022, the Company issued a press release announcing its second quarter 2022 financial results for the period ending June 30, 2022.  Press Release, Spire Global, Inc., Spire Global Announces Second Quarter 2022 Results (Aug. 10, 2022) (the "August 10, 2022, Press Release").

85.     In the August 10, 2022 Press Release, the Company stated as follows:

"The achievements in the second quarter highlight our continued execution across the business.  We again delivered results that were better than expected on both the top and bottom line," said Peter Platzer, Spire's CEO.  "As the world continues to face challenges associated with geopolitical and climate change events, Spire continues to provide customers with unique, mission-critical insights and solutions from space that create a more sustainable, equitable, and prosperous future."

"We successfully executed on our 'land and expand' strategy in the second quarter, adding new solution customers and increasing revenue growth from our existing customers," said Thomas Krywe, Spire's CFO.  "The $120 million credit facility that we successfully closed also highlights the strength of our business, which further improves our balance sheet, and allows us to continue executing on our four growth pillars as we relentlessly drive towards positive cash flow in 19 to 25 months."

### Second Quarter 2022 Highlights

**Financial:**

- Second quarter 2022 revenue increased 113% year-over-year to $19.4 million, which topped the high end of our guidance of $19.2 million, and was driven by increased adoption by existing customers and recent new customer additions.

- As of June 30, 2022, annual recurring revenue increased 133% to $85.3 million, with 692 annual recurring revenue solution customers.  This is a net increase of 65 customers for the quarter and 27 customers over the high end of our Q2 guidance range.

- Second quarter GAAP operating loss was $16.4 million and non-GAAP operating loss[] was better than our guidance by $1.9 million at a loss of $10.1 million.  Outperformance in the quarter was the result of strong revenue flowing through to margin and lower headcount-related spending.  As Spire continues to make investments in future growth, the focus remains on driving efficiencies in the business to reach profitability.

(Footnote omitted).

86.     On the same day, the Company filed its second quarter 2022 financial report on Form 10-Q with the SEC.  Spire Global, Inc., Quarterly Report (Form 10-Q) (Aug. 11, 2022) ("Q2 2022 Form 10-Q").

87.     The Q2 2022 Form 10-Q was signed by Defendants Platzer and Krywe.

88.     The Q2 2022 Form 10-Q also contained certifications pursuant to SOX signed by Defendants Platzer and Krywe attesting to the accuracy of financial reporting, the disclosure of any material changes to Spire Global, Inc.'s internal control over financial reporting, and the disclosure of all fraud.

89.     The Q2 2022 Form 10-Q contained the same financial results as the August 10, 2022, Press Release.

**C.     November 7, 2022: Spire Global Files Two Amended Restated Financial Reports**

90.     On November 7, 2022, Spire Global, Inc. filed an amended restated statement on Form 10-Q/A with the SEC for its Q1 2022 Form 10-Q.  Spire Global, Inc., Quarterly Report (Form 10-Q) (Aug. 11, 2022) ("Q2 2022 Form 10-Q").

91.     The Q1 2022 Form 10-Q/A reported that for the quarter ending March 31, 2022, Spire Global, Inc. had overstated its net losses by about $6.4 million.

92.     On the same day, Spire Global, Inc. filed an amended restated statement on Form 10-Q/A with the SEC for its Q2 2022 Form 10-Q.  Spire Global, Inc., Quarterly Report (Form 10-Q) (Aug. 11, 2022) ("Q2 2022 Form 10-Q").

93.     The Q2 2022 Form 10-Q/A reported that for the quarter and six months ending on June 30, 2022, Spire Global, Inc. had overstated its net losses by around $2.2 million and $8.6 million.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

94.     Both the Q1 2022 Form 10-Q/A and Q2 2022 Form 10-Q/A contained certifications pursuant to SOX signed by Defendants Platzer and Krywe attesting to the accuracy of financial reporting, the disclosure of any material changes to Spire Global, Inc.'s internal control over financial reporting, and the disclosure of all fraud.

**D.     November 9, 2022: Third Quarter 2022 Financial Results**

95.     On November 9, 2022, Spire Global, Inc. issued a press release announcing its third quarter 2022 financial results for the period ending September 30, 2022.  Press Release, Spire Global, Inc. Spire Global Announces Third Quarter 2022 Results (Nov. 9, 2022) (the "November 9, 2022, Press Release").

96.     In relevant part, the November 9, 2022, Press Release stated as follows:

**Third Quarter 2022 Highlights**

**Financial:**

- Third quarter 2022 revenue increased 114% year-over-year to a record $20.4 million, achieving the high end of guidance.  This was driven by new customer additions as well as increased adoption by existing customers.

- As of September 30, 2022, [ARR] was $98.1 million, an increase of $12.8 million sequentially and 117% year-over-year, indicating the continued success of our land and expand strategy.

- Third quarter GAAP operating loss was $16.4 million and non-GAAP operating loss[] was $11.4 million as we continued to execute on our path to profitability.

(Footnote omitted).

97.     On November 10, 2022, Spire Global, Inc. filed its third quarter 2022 financial report on Form 10-Q with the SEC.  Spire Global, Inc., Quarterly Report (Form 10-Q) (Nov. 10, 2022) ("Q3 2022 Form 10-Q").

98.     The Q3 2022 Form 10-Q was signed by Defendants Platzer and Krywe.

99.     The Q3 2022 Form 10-Q also contained certifications pursuant to SOX signed by Defendants Platzer and Krywe attesting to the accuracy of financial reporting, the disclosure of any material changes to Spire Global, Inc.'s internal control over financial reporting, and the disclosure of all fraud.

100.     The Q3 2022 Form 10-Q contained the same financial results as the November 9, 2022, Press Release.

### E.     March 8, 2023: Full Year 2022 Financial Results

101.     On March 8, 2023, Spire Global, Inc. issued a press release announcing its full year results for the period ending December 31, 2022.  Press Release, Spire Global, Inc., Spire Global Announces Fourth Quarter and Full Year 2022 Results (Mar. 8, 2023) (the "March 8, 2023, Press Release").

102.     In relevant part, the March 8, 2023 Press Release stated as follows:

**<u>Fourth Quarter and Full Year 2022 Highlights</u>**

**Financial:**

- Fourth quarter 2022 revenue increased 49% year-over-year to a record $22.4 million.  This was driven by new customer additions as well as increased adoption by existing customers.

- As of December 31, 2022, [ARR] was $99.4 million, an increase of 41% year-over-year.

- ARR net retention rate for full fiscal year 2022 was 117%, up from 110% for the full fiscal year 2021, indicating the continued success of our land and expand strategy.

- Fourth quarter GAAP operating loss was $16.3 million, an improvement of $7.7 million year-over-year, and non-GAAP operating loss[] was $10.2 million as we continued to execute on our path to profitability.

(Footnote omitted).

103.    On March 15, 2023, Spire Global, Inc. filed its full year 2022 financial report on Form 10-K with the SEC.  Spire Global, Inc., Annual Report (Form 10-K) (Mar. 15, 2023) (the "2022 Form 10-K").

104.    The 2022 Form 10-K was signed by Defendants Condor, Amble, Hoke, Krywe, Messer, Pearlstein, Platzer, and Porteous.

105.    The 2022 Form 10-K also contained certifications pursuant to the SOX signed by Defendants Platzer and Krywe attesting to the accuracy of financial reporting, the disclosure of any material changes to Spire Global, Inc.'s internal control over financial reporting, and the disclosure of all fraud.

106.    The 2022 Form 10-K contained the same financial results as the March 8, 2023, Press Release.

**F.      May 1, 2023: the Company Files a False and Misleading Proxy Statement**

107.    On May 1, 2023, Spire Global, Inc. filed a proxy statement on Schedule 14A with the SEC.  Spire Global, Inc., Proxy Statement (Form DEF 14A) (May 1, 2023) (the "2023 Proxy Statement").

108.    The Director Defendants solicited the 2023 Proxy Statement.

109.    The 2023 Proxy Statement contained material misstatements and omissions in violation of Section 14(a) of the Exchange Act.

110.    The 2023 Proxy Statement asked Spire Global, Inc. stockholders to vote to, among other things, (1) reelect Defendant Porteous to the Board for a three-year term ending as of the Company's annual meeting of stockholders in fiscal year 2026; and (2) ratify the appointment of PricewaterhouseCoopers LLP ("PwC") as Spire Global, Inc.'s independent registered public accounting firm for the fiscal year ending December 31, 2024.

111.    The 2023 Proxy Statement stated as follows regarding the responsibilities of the

Audit Committee:

- selecting a qualified firm to serve as the independent registered public accounting firm to audit our financial statements;

- helping to ensure the independence and oversee the performance of the independent registered public accounting firm;

- reviewing and discussing the scope and results of the audit with the independent registered public accounting firm, and reviewing, with management and the independent registered public accounting firm, our interim and year-end results of operations;

- reviewing our financial statements and our critical accounting policies and estimates;

- overseeing and monitoring the integrity of our financial statements, accounting and financial reporting processes, and internal controls;

- overseeing the design, implementation, and performance of our internal audit function;

- overseeing our compliance with legal and regulatory requirements as they relate to financial statements or accounting matters;

- developing procedures for employees to submit concerns anonymously about questionable accounting or audit matters;

- overseeing our policies on risk assessment and risk management;

- overseeing compliance with our code of business conduct and ethics;

- reviewing and approving related party transactions; and

- approving or, as required, pre-approving, all audit and all permissible non-audit services, other than de minimis non-audit services, to be performed by the independent registered public accounting firm.

112.    The 2023 Proxy Statement stated as follows regarding the Board's role in risk

oversight:

**Role of Board in Risk Oversight Process**

Risk is inherent with every business, and we face a number of risks, including strategic, financial, business and operational, legal and compliance, and reputational, in the pursuit and achievement of our strategic objectives. We have designed and implemented processes to manage risk in our operations. Management is responsible for the day-to-day oversight and management of strategic, operational, legal and compliance, cybersecurity, and financial risks, while our board of directors, as a whole and assisted by its committees, has responsibility for the oversight of our risk management framework, which is designed to identify, assess, and manage risks to which our Company is exposed, as well as to foster a corporate culture of integrity. Consistent with this approach, our board of directors regularly reviews our strategic and operational risks in the context of discussions with management, question and answer sessions, and reports from the management team at each regular board meeting. Our board of directors also receives regular reports on all significant committee activities at each regular board meeting and evaluates the risks inherent in significant transactions.

In addition, our board of directors has tasked designated standing committees with oversight of certain categories of risk management. Our audit committee assists our board of directors in fulfilling its oversight responsibilities with respect to risk management in the areas of internal control over financial reporting and disclosure controls and procedures and legal and regulatory compliance. Our audit committee also, among other things, discusses with management and the independent auditor guidelines and policies with respect to risk assessment and risk management, as well as potential conflicts of interest. Our compensation committee assesses risks arising from our compensation philosophy and practices applicable to all employees to determine whether they encourage excessive risk-taking and evaluates policies and practices that could mitigate such risks. Our nominating and corporate governance committee assesses risks relating to our corporate governance practices and the independence of the board.

113.   The 2023 Proxy Statement was materially misleading because it failed to disclose

the following:

a.   That although Spire Global, Inc. claimed its officers and directors adhered to the Code of Conduct, the Individual Defendants were violating the Code of Conduct; and

b.   That contrary to the 2023 Proxy Statement's descriptions of the Board's risk oversight responsibilities, the Board and its committees did not adequately exercise these functions and were causing or permitting Spire Global, Inc. to issue false and misleading statements.

### G.      May 10, 2023: First Quarter 2023 Financial Results

114.      On May 10, 2023, Spire Global, Inc. issued a press release announcing its first quarter 2023 financial results for the period ending March 31, 2023.  Press Release, Spire Global, Inc., Spire Global Announces Second Quarter 2022 Results (May 10, 2023) (the "May 10, 2023, Press Release").

115.      In the May 10, 2023, Press Release, Spire Global, Inc. stated as follows:

**First Quarter 2023 Highlights**

**Financial:**

First quarter 2023 revenue increased 34% year-over-year to a record $24.2 million, which exceeded our expectations.  Revenue growth was driven by new customer additions as well as increased adoption by existing customers.

As of March 31, 2023, we surpassed $100 million of [ARR] by reaching $104.8 million, an increase of 28% from our ARR as of March 31, 2022.

*      *      *

First quarter GAAP operating loss was $14.5 million, an improvement of $5.5 million year-over-year.  Non-GAAP operating loss [] was $9.8 million, a $3.0 million improvement year-over-year and better than our expectations as we continued to execute on our path to profitability.

(Footnote omitted).

116.      On the same day, Spire Global, Inc. filed its first quarter 2023 financial report on Form 10-Q with the SEC.  Spire Global, Inc., Quarterly Report (Form 10-Q) (May 10, 2023) ("Q1 2023 Form 10-Q").

117.      The Q1 2023 Form 10-Q was signed by Defendants Platzer and Krywe.

118.      The Q1 2023 Form 10-Q also contained certifications pursuant to SOX signed by Defendants Platzer and Krywe attesting to the accuracy of financial reporting, the disclosure of any material changes to Spire Global, Inc.'s internal control over financial reporting, and the disclosure of all fraud.

119.   The Q1 2023 Form 10-Q contained the same financial results as stated in the May 10, 2023, Press Release.

**H.     August 9, 2023: Second Quarter 2023 Financial Results**

120.   On August 9, 2023, Spire Global, Inc. issued a press release announcing its second quarter 2023 financial results for the period ending June 30, 2023.  Press Release, Spire Global, Inc., Spire Global Announces Strong Second Quarter 2023 Results; Expects Positive Cash Flow from Operations by Year End (Aug. 9, 2023) (the "August 9, 2023, Press Release").

121.   In the August 9, 2023, Press Release, Spire Global, Inc. stated as follows:

**Second Quarter 2023 Highlights**

**Financial:**

- Second quarter 2023 revenue increased 37% year-over-year to a record $26.5 million, which exceeded the midpoint of our expectations by $2.0 million.  Revenue growth was driven by new customer additions as well as increased adoption by existing customers.

- Spire added $8.0 million of [ARR] during the quarter and had ARR of $112.8 million as of June 30, 2023, an increase of 32% from our ARR as of June 30, 2022.

                                   *        *        *

- Second quarter 2023 GAAP operating loss was $11.0 million, an improvement of $5.4 million year-over-year.  Non-GAAP operating loss[] was $6.1 million, a $4.0 million improvement year-over-year and $3.2 million better than the midpoint of our expectations, reflecting strong execution on our path to profitability.

- Second quarter 2023 net loss was $16.3 million, a 57% year-over-year improvement from net loss of $38.3 million.  Adjusted EBITDA loss was $3.0 million, or negative 11% of revenue, for second quarter 2023, a sequential quarter-over-quarter improvement of $3.7 million that exceeded the midpoint of our expectations by $2.9 million.

(Footnote omitted).

122.    On the same day, Spire Global, Inc. filed its second quarter 2023 financial report on Form 10-Q with the SEC.  Spire Global, Inc., Quarterly Report (Form 10-Q) (Aug. 9, 2023) ("Q2 2023 Form 10-Q").

123.    The Q2 2023 Form 10-Q was signed by Defendants Platzer and Krywe.

124.    The Q2 2023 Form 10-Q also contained certifications pursuant to SOX signed by Defendants Platzer and Krywe attesting to the accuracy of financial reporting, the disclosure of any material changes to Spire Global, Inc.'s internal control over financial reporting, and the disclosure of all fraud.

125.    The Q2 2023 Form 10-Q restated the financial results as stated in the August 9, 2022, Press Release.

**I.      November 8, 2023: Third Quarter 2023 Financial Results**

126.    On November 8, 2023, Spire Global, Inc. issued a press release announcing its third quarter 2023 financial results for the period ending September 30, 2023.

127.    Spire Global, Inc., Quarterly Report (Form 10-Q) (Aug. 9, 2023) ("Q2 2023 Form 10-Q").

128.    In relevant part, the November 9, 2023, Press Release stated as follows:

**Third Quarter 2023 Highlights**

**Financial:**

Third quarter 2023 revenue increased 34% year-over-year to a record $27.3 million, which exceeded the top end of our expectations by $0.3 million.  Revenue growth was driven by new customer additions as well as increased milestone-based projects.

*        *        *

Third quarter 2023 GAAP operating loss was $11.0 million, an improvement of $5.4 million year-over-year, and non-GAAP operating loss[] was $6.2 million, a $5.2 million improvement year-over-year.  We believe these results reflect strong execution on our path to profitability.

Third quarter 2023 net loss was $17.8 million, a $4.0 million year-over-year improvement.  Adjusted EBITDA loss was $3.4 million, for third quarter 2023, a $5.0 million or 60% improvement year-over-year.

(Footnote omitted).

129.    On the same day, Spire Global, Inc. filed its third quarter 2023 financial report on Form 10-Q with the SEC.  Spire Global, Inc., Quarterly Report (Form 10-Q) (Nov. 8, 2023) ("Q3 2023 Form 10-Q").

130.    The Q3 2023 Form 10-Q was signed by Defendants Platzer and Basola.

131.    The Q3 2023 Form 10-Q also contained certifications pursuant to SOX signed by Defendants Platzer and Basola attesting to the accuracy of financial reporting, the disclosure of any material changes to Spire Global, Inc.'s internal control over financial reporting, and the disclosure of all fraud.

132.    The Q3 2023 Form 10-Q restated the financial results as stated in the November 8, 2023, Press Release.

**J.      March 6, 2024:Full Year 2023 Financial Results**

133.    On March 6, 2024, Spire Global, Inc. issued a press release announcing its quarter and full year results for the period ending December 31, 2023.  Press Release, Spire Global, Inc., Spire Global Announces Strong Fourth Quarter and Full Year 2023 Results; Achieves Positive Cash Flow from Operations (Mar. 6, 2024) (the "March 6, 2024, Press Release").

134.    In relevant part, the March 6, 2024, Press Release stated as follows:

**Fourth Quarter and Full Year 2023 Highlights**

**Financial:**

- Fourth quarter 2023 revenue was $27.7 million, representing the 10th consecutive quarter of record revenue.  Full year 2023 revenue was $105.7 million, representing 32% year-over-year growth, and meeting our objective of over 30% annual revenue growth.

- Fourth quarter 2023 U.S. [GAAP] operating loss was $8.2 million, a 50% improvement year-over-year, and full year 2023 GAAP operating loss was $44.6 million, a 35% improvement.  Fourth quarter 2023 non-GAAP operating loss was $3.6 million, a 65% improvement year-over year and above the high end of our guidance range.  Full year 2023 non-GAAP operating loss was $25.8 million, a 42% improvement year-over-year.  We believe these results reflect strong execution on our path to profitability.

- Fourth quarter 2023 net loss was $12.2 million, a $5.3 million year-over-year improvement.  Adjusted EBITDA for the fourth quarter 2023 was positive $2.1 million, a $9.4 million improvement year-over-year and over $1 million above the high end of our guidance range.

*     *     *

### Financial Outlook

Spire is providing the following guidance for the first quarter 2024 and for the full year ending December 31, 2024:

| | Q1'24 Ranges | | FY'24 Ranges | |
|---|---|---|---|---|
| | Low | High | Low | High |
| Revenue (millions) | $    27.0 | $    29.0 | $    138.0 | $    148.0 |
| Y/Y Growth | 12% | 20% | 31% | 40% |
| Non-GAAP Operating Loss (millions) | $    (8.0) | $    (6.0) | $    (5.5) | 2.5 |
| Adjusted EBITDA (millions) | $    (2.0) | $    0.0 | $    13.0 | 19.0 |
| Non-GAAP (Loss) Income Per Share | $    (0.36) | $    (0.27) | $    (0.24) | 0.11 |
| Basic Weighted Average Shares  (millions) | 22.0 | 22.0 | 22.5 | 22.5 |

135.    On the same day, Spire Global, Inc. filed its full year 2023 financial report on Form 10-K with the SEC.  Spire Global, Inc., Annual Report (Form 10-K) (Mar. 6, 2024) (the "2023 Form 10-K").

136.    The 2023 Form 10-K was signed by Defendants Basola, Condor, Amble, Hoke, Messer, Platzer, and Porteous.

137.    The 2023 Form 10-K also contained certifications pursuant to SOX signed by Defendants Platzer and Basola attesting to the accuracy of financial reporting, the disclosure of any material changes to Spire Global, Inc.'s internal control over financial reporting, and the disclosure of all fraud.

138.   The 2023 Form 10-K stated as follows regarding Spire Global, Inc.'s revenue recognition methodology:

**Revenue Recognition**

The Company generates revenue from four main solutions: Maritime, Aviation, Weather and Space Services.   The Company offers the following three data solutions to customers:

- **Maritime:** precise space-based data used for highly accurate ship monitoring, ship safety and route optimization.

- **Aviation:** precise space-based data used for highly accurate aircraft monitoring, aircraft safety and route optimization.

- **Weather:** precise space-based data used for highly accurate weather forecasting.

As a fourth solution, the Company is also pioneering an innovative "space-as-a-service" business model through its Space Services solution.   The Company leverages its fully deployed infrastructure and large-scale operations to enable customers to obtain customized data through its application programming interface ("API") infrastructure.

Revenue recognition involves the identification of the contract, identification of performance obligations in the contract, determination of the transaction price, allocation of the transaction price to the previously identified performance obligations and recognition of revenue as the performance obligations are satisfied. The Company recognizes revenue for each separately identifiable performance obligation in a data solutions contract representing a promise to transfer data or a distinct service to a customer.   In most cases, data provided under the Company's data solutions contracts are accounted for as a single performance obligation due to the integrated nature of the Company's precise space-based data.   In some data access contracts, the Company provides multiple project-based services to a customer, most commonly when a contract covers multiple phases of the Space Services solution (e.g., development, manufacturing, launch and satellite operations).   In those cases, the Company accounts for each distinct project-based deliverable as a separate performance obligation and allocates the transaction price to each performance obligation based on its relative standalone selling price, which is generally estimated using cost plus a reasonable margin based on value added to the customer.

The Company recognizes revenue when (or as) the performance obligation is satisfied, either over time or at a point in time.   The Company has determined that each data access subscription provides a series of distinct services in which the customer simultaneously receives and consumes data.   Therefore, for subscription-

based data services, the Company recognizes revenue ratably over the subscription period. Revenue is recognized upon delivery for data products such as archive data and custom reports, which are performance obligations satisfied at a point in time upon transfer of control. For Space Services, control of the data typically is transferred at the time the customer gains access to the benefit of the service. If customer acceptance is required, revenue is recognized upon receipt of notice of customer acceptance, which is generally a short period of time after delivery. For certain project-based performance obligations (e.g., manufacturing and launch phases), revenue is recognized over time, using the output method, specifically contract milestones, which we have determined to be the most direct and reasonable measure of progress as they reflect the results achieved and value transferred to the customer.

139.    The 2023 Form 10-K stated as follows regarding Spire Global, Inc.'s internal controls over financial reporting:

[O]ur management has concluded that our consolidated financial statements for the periods covered by and included in this Annual Report are prepared in accordance with accounting principles generally accepted in the United States [GAAP] and fairly present, in all material respects, our financial position, results of operations and cash flows for each of the periods presented herein.

**K.     April 23, 2024: The Company Files a False and Misleading Proxy Statement**

140.    On April 23, 2024, Spire Global filed a proxy statement on Schedule 14A with the SEC. Spire Global, Inc., Proxy Statement (Form DEF 14A) (Apr. 23, 2024) (the "2024 Proxy Statement").

141.    The Director Defendants solicited the 2024 Proxy Statement, which was filed pursuant to Section 14(a) of the Exchange Act.

142.    The 2024 Proxy Statement contained material misstatements and omissions.

143.    The 2024 Proxy Statement asked Spire Global stockholders to vote to, among other things, (1) reelect Defendants Condor and Hoke to the Board for a three-year term ending as of the Company's annual meeting of stockholders in fiscal year 2027; (2) ratify the appointment of PricewaterhouseCoopers LLP as Spire Global's independent registered public accounting firm for the fiscal year ending December 31, 2024; (3) approve an amendment to the Company's 2021

Equity Incentive Plan to increase the number of shares authorized for issuance under the plan by 1,000,000 shares; and (4) approve an amendment to the Company's Restated Certificate of Incorporation to provide for exculpation of officers as permitted by Delaware law.

144.   The 2024 Proxy Statement affirmed the financial results disclosed in the 2024 Press Release.

145.   Specifically, the 2024 Proxy Statement reported a 2023 non-GAAP operating loss of $25.8 million and a GAAP operating loss of $44.7 million.

146.   The 2024 Proxy Statement further reported annual recurring revenue of $106.8 million for the Company's fiscal year 2023.

147.   The 2024 Proxy Statement stated as follows regarding the responsibilities of the Audit Committee:

- selecting a qualified firm to serve as the independent registered public accounting firm to audit our financial statements;

- helping to ensure the independence and oversee the performance of the independent registered public accounting firm;

- reviewing and discussing the scope and results of the audit with the independent registered public accounting firm, and reviewing, with management and the independent registered public accounting firm, our interim and year-end results of operations;

- reviewing our financial statements and our critical accounting policies and estimates;

- overseeing and monitoring the integrity of our financial statements, accounting and financial reporting processes, and internal controls;

- overseeing the design, implementation, and performance of our internal audit function;

- overseeing our compliance with legal and regulatory requirements as they relate to financial statements or accounting matters;

- developing procedures for employees to submit concerns anonymously about questionable accounting or audit matters;

- overseeing our policies on risk assessment and risk management;

- overseeing compliance with our code of business conduct and ethics;

- reviewing and approving related party transactions; and

- approving or, as required, pre-approving, all audit and all permissible non-audit services, other than de minimis non-audit services, to be performed by the independent registered public accounting firm.

148.    The 2024 Proxy Statement stated as follows regarding the Board's role in risk oversight:

**Role of Board in Risk Oversight Process**

Risk is inherent with every business, and we face a number of risks, including strategic, financial, business and operational, legal and compliance, and reputational, in the pursuit and achievement of our strategic objectives.  We have designed and implemented processes to manage risk in our operations. Management is responsible for the day-to-day oversight and management of strategic, operational, legal and compliance, cybersecurity, and financial risks, while our board of directors, as a whole and assisted by its committees, has responsibility for the oversight of our risk management framework, which is designed to identify, assess, and manage risks to which our Company is exposed, as well as to foster a corporate culture of integrity.  Consistent with this approach, our board of directors regularly reviews our strategic and operational risks in the context of discussions with management, question and answer sessions, and reports from the management team at each regular board meeting.  Our board of directors also receives regular reports on all significant committee activities at each regular board meeting and evaluates the risks inherent in significant transactions.

In addition, our board of directors has tasked designated standing committees with oversight of certain categories of risk management.  Our audit committee assists our board of directors in fulfilling its oversight responsibilities with respect to risk management in the areas of internal control over financial reporting and disclosure controls and procedures and legal and regulatory compliance.  Our audit committee also, among other things, discusses with management and the independent auditor guidelines and policies with respect to risk assessment and risk management, as well as potential conflicts of interest.  Our compensation committee assesses risks arising from our compensation philosophy and practices applicable to all employees to determine whether they encourage excessive risk-taking and evaluates policies and practices that could mitigate such risks.  Our nominating and corporate governance committee assesses risks relating to our corporate governance practices and the independence of the board.

149.     With respect to the purpose and key reasons to increase Spire Global, Inc.'s 2021

Equity Incentive Plan, the 2024 Proxy Statement stated as follows:

**Purpose**

Equity compensation is an important component of our executive, employee, consultant and director compensation programs.  We believe it best aligns employee, consultant and director compensation with stockholder interests and motivates participants to achieve long-range goals tied to the success of the Company.  The 2021 Plan permits shares of our Class A common stock to be awarded as employee incentive compensation, allowing the board of directors to attract and retain key employees, provide them competitive compensation, adapt to evolving compensation practices and account for our growth.

**Key Reasons to Vote for this Proposal**

- *Equity awards are a key part of our compensation program.*  We believe that equity compensation has been, and will continue to be, a critical component of our compensation package because it (i) contributes to a culture of ownership among our employees and other service providers, (ii) aligns our employees' interests with the interests of our other stockholders, and (iii) preserves our cash resources.  It has been our practice to grant equity broadly throughout the organization, not just to executive officers and directors.  We compete for talent in an extremely competitive industry, often with larger companies with greater resources.  We believe that our ability to compensate with equity awards is essential to our efforts to attract and retain top talent.

- *Equity awards incentivize the achievement of key business objectives and increases in stockholder value.*  We believe that equity awards have been and will continue to be critical to our success and that they play an important role in incentivizing employees across our Company to achieve our key business objectives and drive increases in stockholder value.  The 2021 Plan promotes the long-term financial interest of our Company, including the growth in value of our Company's equity and enhancement of long-term stockholder return.

- *The 2021 Plan provides necessary flexibility.*  The 2021 Plan provides for the grant of RSUs, restricted stock, non-qualified and incentive stock options, stock appreciation rights, and performance-based awards.  The flexibility inherent in the plan permits the compensation committee to change the type, terms and conditions of awards as circumstances may change.  We believe that this flexibility and the resulting ability to more affirmatively adjust the nature and amounts of executive compensation are particularly important for a public company such as ours, given the volatility of the public markets and reactions to economic and world events.

150.    The 2024 Proxy Statement was materially misleading because it failed to disclose the following:

  a.     Although Spire Global, Inc. claimed its officers and directors adhered to the Code of Conduct, the Individual Defendants were violating the Code of Conduct;

  b.     Contrary to the 2024 Proxy Statement's descriptions of the Board's risk oversight responsibilities, the Board and its committees did not adequately exercise these functions and were causing or permitting Spire Global, Inc. to issue false and misleading statements;

  c.     The Individual Defendants asked investors to approve an amendment to Spire Global, Inc.'s 2021 Equity Incentive Plan for their own benefit; and

  d.     Requested investors to amend the Company's restated Certificate of Incorporation under false pretenses that the Individual Defendants were abiding to their fiduciary duties and the Code of Conduct.

**L.    May 15, 2024: First Quarter 2024 Financial Results**

151.    On May 15, 2024, Spire Global, Inc. issued a press release announcing its first quarter 2024 financial results.  Press Release, Spire Global, Inc., Spire Global Announces First Quarter 2024 Results (May 15, 2024) (the "May 15, 2024, Press Release").

152.    The May 15, 2024, stated as follows:

- First quarter 2024 revenue was $25.7 million, representing 6% year-over-year growth.

- First quarter 2024 U.S. [GAAP] operating loss was $11.9 million, an 18% improvement year-over-year.  First quarter 2024 non-GAAP operating loss was $7.0 million, a 28% improvement year-over-year.

- GAAP operating margin was (46%) and non-GAAP operating margin was (27%), each reflecting a 14-percentage point improvement year-over-year. The Company believes these results reflect its ongoing focus on cost control and drive towards profitability.

- First quarter 2024 net loss was $25.2 million, a 43% decline year-over-year, and adjusted EBITDA was negative $1.1 million, reflecting an 84% improvement year-over-year.

- As of March 31, 2024, the remaining performance obligations under contract not yet recognized as revenue was $195.7 million.  The Company expects to recognize approximately 42% of these future commitments over the next 12 months.

- During the first quarter of 2024, the Company raised gross proceeds of $40.0 million at an average price of $13.44 per share, which the Company believes positions it to re-finance its existing Blue Torch Capital loan to lower its cost of funding.

*     *     *

- Spire is providing the following guidance for the second quarter 2024 and is revising its guidance for the full year ending December 31, 2024:

| | Q2'24 Ranges | | FY'24 Ranges | |
|---|---|---|---|---|
| | Low | High | Low | High |
| Revenue (millions) | $ 29.0 | $ 33.0 | $ 122.0 | $ 132.0 |
| Y/Y Growth | 9% | 25% | 15% | 25% |
| Non-GAAP Operating (Loss) Income (millions) | $ (3.0) | $ 1.0 | $ (11.0) | $ (1.0) |
| Adjusted EBITDA (millions) | $ 2.0 | $ 5.0 | $ 7.0 | $ 15.0 |
| Non-GAAP Loss Per Share | $ (0.31) | $ (0.15) | $ (1.11) | $ (0.70) |
| Basic Weighted Average Shares  (millions) | 24.7 | 24.7 | 24.2 | 24.2 |

153.    On the same day, Spire Global, Inc. filed its first quarter 2024 financial report on Form 10-Q with the SEC.  Spire Global, Inc., Quarterly Report (Form 10-Q) (May 15, 2024) ("Q1 2024 Form 10-Q").

154.    The Q1 2024 Form 10-Q was signed by Defendants Basola, Condor, Amble, Hoke, Messer, Platzer, and Porteous.

155.    The Q1 2024 Form 10-Q also contained certifications pursuant to SOX signed by Defendants Platzer and Basola attesting to the accuracy of financial reporting, the disclosure of any material changes to Spire Global, Inc.'s internal control over financial reporting and the disclosure of all fraud.

156.    The Q1 2024 Form 10-Q contained a substantially similar statement as referenced in ¶ 139, *supra*, regarding Spire Global's internal controls over financial reporting.

*     *     *

157.    The above statements identified in ¶¶ 77-156 were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors:

        a.     Spire Global, Inc. had embedded leases of identifiable assets in certain service contracts.

        b.     Spire Global, Inc. lacked effective accounting controls and procedures to recognize revenues of pre-space mission activities.

        c.     Consequently, Spire Global, Inc. overstated its revenue for its Space as a Service business segment contracts.

        d.     Spire Global, Inc. failed to have adequate internal controls over financial reporting.

        e.     Spire Global, Inc. filed financial statements that were not prepared in conformity with GAAP including, without limitation, principles applicable to proper revenue recognition.

        f.     Spire Global, Inc. faced the likelihood of having to restate its financial statements to remove certain previously recorded pre-space mission activity revenue from the period in which pre-space mission activities were performed under certain contracts, and instead, record that revenue over the period in which data is delivered.

        g.     As a result, Defendants' positive statements about Spire Global, Inc.'s business, operations, and prospects were materially false, misleading, and lacked a reasonable basis.

## INVESTORS BEGIN TO LEARN THE TRUTH

158.    On August 14, 2024, Spire Global, Inc. filed a notice of late filing on Form NT 10-Q with the SEC announcing that it would late file its second quarter 2024 Form 10-Q.  Spire Global, Inc., Notification of Late Filing (Form NT 10-Q) (Aug. 14, 2024) ("Q2 2024 Form NT 10-Q").

159.    In relevant part, the Q2 2024 Form NT 10-Q stated as follows:

Spire Global, Inc. (the "Company") is unable to file its Quarterly Report on Form 10-Q for the quarter ended June 30, 2024 (the "Quarterly Report") within the prescribed time period without unreasonable effort and expense.  The Company is

in the process of reviewing its accounting practices and procedures with respect to revenue recognition related to certain contracts in its "Space as a Service" business (the "Contracts") under applicable accounting standards and guidance.  The re-evaluation relates to the potential existence of embedded leases of identifiable assets in the Contracts and the related recognition of revenue for pre- space mission activities.  The Company is also considering any related internal control matters associated with the Contracts.  Due to this ongoing review, the preparation of the Company's condensed consolidated financial statements as of June 30, 2024 and for the three and six months ended June 30, 2024, will require additional time to complete.  Depending upon the results of this review, the Company may be required to restate or revise its previously issued financial statements.

*       *       *

While the Company's review is ongoing, at the time of filing this report, the type of Contracts that the Company has identified for re-evaluation resulted in recognized revenue of approximately $10 to $15 million on an annual basis. Depending on the results of the review, additional financial measures such as gross profit could also be impacted.   However, the Company believes that the reevaluation of its revenue recognition for these Contracts will not impact the Company's statements of cash flows for any period.

160.    On this news, Spire Global, Inc.'s stock price dropped 33.56%, to close at $6.75 per share on August 15, 2024.

161.    The above statements identified in ¶ 159 were materially false and misleading and failed to disclose material adverse facts about Spire Global, Inc.'s business, operations, and prospects.

162.    Specifically, Defendants failed to disclose to investors:

   a.    Spire Global, Inc. had embedded leases of identifiable assets in certain service contracts.

   b.    Spire Global, Inc. lacked effective accounting controls and procedures to recognize revenues of pre-space mission activities.

   c.    Consequently, Spire Global, Inc. overstated its revenue for its Space as a Service business segment contracts.

   d.    Spire Global, Inc. failed to have adequate internal controls over financial reporting.

     e.     Spire Global, Inc. filed financial statements that were not prepared in conformity with GAAP including, without limitation, principles applicable to proper revenue recognition.

     f.     Spire Global, Inc. faced the likelihood of having to restate its financial statements to remove certain previously recorded pre-space mission activity revenue from the period in which pre-space mission activities were performed under certain contracts, and instead, record that revenue over the period in which data is delivered.

     g.     As a result, Defendants' positive statements about Spire Global, Inc.'s business, operations, and prospects were materially false, misleading, and lacked a reasonable basis.

## INVESTORS LEARN THE FULL TRUTH

163.    On August 27, 2024, after the market closed, Spire Global filed a Form 8-K admitting that problems with its previously filed financial statements went back to its Q1 2022 Form 10-Q originally released on May 11, 2022. Spire Global, Inc., Current Report (Form 8-K) (Aug. 27, 2024) ("August 27, 2024, Form 8-K").

164.    The August 27, 2024 Form 8-K also informed investors that they should no longer rely on previously filed Q1 2022 Form 10-Q, Q2 2022 Form 10-Q, Q3 2022 Form 10-Q, 2022 Form 10-K, Q1 2023 Form 10-Q, Q2 2023 Form 10-Q, Q3 2023 Form 10-Q, 2023 Form 10-K, and Q1 2024 Form 10-Q Reports and that they would be restated.

165.    In relevant part, the August 27, 2024, Form 8-K stated the following:

**Item 4.02 Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

As previously disclosed in the Company's Form 12b-25 filed with the SEC on August 14, 2024, the Company has been reviewing its accounting practices and procedures with respect to revenue recognition related to certain contracts in its "Space as a Service" business (the "Contracts") under applicable accounting standards and guidance. The Company has retained technical accounting experts to help examine and make recommendations regarding the potential existence of embedded leases of identifiable assets in the Contracts and the recognition of revenue and related costs for pre-space mission activities under such Contracts.

The Company is reviewing the potential existence of embedded leases of identifiable assets in the Contracts at this time.  Separately from this ongoing review, the Company has determined that its accounting for these Contracts, including primarily revenue and cost recognition timing for pre-space mission activities, was incorrect and that certain previously issued financial statements need to be restated to remove certain previously recorded pre-space mission activity revenue from the period in which pre-space mission activities were performed under the Contracts, and instead, record that revenue over the period in which data is delivered.  As a result of this determination and the ongoing review of the item disclosed above, the preparation of the Company's condensed consolidated financial statements as of June 30, 2024 and for the three and six months ended June 30, 2024, will require additional time to complete.

In connection with this evaluation, on August 23, 2024, the audit committee of the board of directors of the Company, after discussion with the Company's management and with PricewaterhouseCoopers LLP ("PwC"), concluded that the following should no longer be relied upon: (a) the Company's previously issued unaudited condensed consolidated financial statements as of and for (i) the quarters and nine months ended September 30, 2023 and 2022, (ii) the quarters and six months ended June 30, 2023 and 2022, and (iii) the quarters ended March 31, 2024, 2023 and 2022, and (b) the Company's previously issued audited consolidated financial statements as of and for the years ended December 31, 2023 and 2022 (collectively, the "Affected Periods"), filed with the SEC in the respective Quarterly Reports on Form 10-Q for such quarterly periods (the "Form 10-Qs") and in the Annual Reports on Form 10-K (the "Form 10-Ks") for such years and included in any reports, related earnings releases, investor presentations or similar communications of the Company's financial results.  Based on its review of the Affected Periods to date, the Company plans to restate its consolidated financial statements for the Affected Periods and include them in one or more amended periodic reports (the "Amended Filings") to be filed with the SEC.  The Company is working to complete its review and such restatements as soon as practicable and currently expects to be able to file the Amended Filings and the Q2 2024 Form 10-Q within the six-month period provided by the NYSE.

In addition, the Company's management is in the process of evaluating whether the matter discussed above will result in the identification of additional material weaknesses in the Company's internal control over financial reporting. Management's conclusions regarding the impacts of the matter discussed above on the Company's internal control over financial reporting will be included in the Amended Filings.

While the Company's review is ongoing, at the time of filing this Current Report on Form 8-K, the type of Contracts that the Company has identified for re-evaluation and restatement resulted in recognized revenue currently estimated to be $10 to $15 million on an annual basis.  Depending on the results of the review, additional financial measures such as gross profit could also be impacted.

However, the Company believes that the restatement of its revenue recognition for these Contracts will not impact the Company's overall cash flows for any period.

The audit committee and the Company's management have discussed the matters disclosed in this Current Report on Form 8-K with PwC.

## PLAINTIFFS FILE SECURITIES CLASS ACTIONS

166.    On August 20, 2024, a plaintiff filed a securities class action complaint captioned *Bousso v. Spire Global, Inc. et al.*, Case No. 1:24-cv-01458 in the United States District Court for the Eastern District of Virginia against Spire Global, Inc. and defendants Basola and Platzer (the "*Bousso* Action").

167.    The *Bousso* Action alleges that throughout the class period of March 6, 2024, to August 14, 2024, the defendants made materially false and/or misleading statements, failing to disclose material adverse facts about Spire Global, Inc.'s business, operations, and prospects.

168.    Specifically, the *Bousso* Action alleges that defendants failed to disclose to investors that (1) there were embedded leases of identifiable assets and pre-space mission activities for certain Space Services contracts; (2) Spire Global, Inc. lacked effective internal controls regarding revenue recognition for these contracts; (3) as a result, Spire Global, Inc. overstated revenue for certain Space Services contracts; and (4) as a result of the foregoing, Defendants' positive statements about Spire Global, Inc.'s business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

169.    On October 14, 2024, another plaintiff filed a securities class action complaint captioned *Tagawa v. Spire Global, Inc. et al.*, Case No. 1:24-cv-01808 in the United States District Court for the Eastern District of Virginia against Spire Global, Inc. and defendants Basola, Platzer, and Krywe.

170. The *Tagawa* Action alleges that throughout the class period of May 11, 2022, to August 27, 2024, defendants made materially false and/or misleading statements, failing to disclose material adverse facts about Spire Global, Inc.'s business, operations, and prospects.

171. Specifically, the *Tagawa* Action alleges that since Spire Global, Inc.'s quarter ended March 31, 2022, defendants (1) filed financial statements that were not prepared in conformity with GAAP including, without limitation, principles applicable to proper revenue recognition; (2) filed SOX certifications falsely claiming that: (a) Spire Global, Inc.'s financial statements did not contain untrue statements of material facts or omitted to state material facts necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the periods covered its financial reports and (b) had disclosure controls and procedures and internal control over financial reporting that did not provide reasonable assurance regarding the reliability of its financial reporting and the preparation of financial statements for external purposes; (3) faced the likelihood of having to restate its financial statements to remove certain previously recorded pre-space mission activity revenue from the period in which pre-space mission activities were performed under certain contracts, and instead, record that revenue over the period in which data is delivered; and (4) that, as a result of the foregoing, the defendants' positive statements about Spire Global, Inc.'s business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## THE INDIVIDUAL DEFENDANTS' MISCONDUCT
### DIRECTLY AND PROXIMATELY CAUSES DAMAGES TO SPIRE GLOBAL

172. As a result of the Individual Defendants' improprieties, Spire Global, Inc. disseminated improper public statements concerning Spire Global, Inc.'s operations, prospects, and internal controls.

173. This misconduct has devastated Spire Global, Inc.'s credibility.

174.    As a direct and proximate result of the Individual Defendants' actions, Spire Global, Inc. has expended and will continue to expend significant sums of money defending and paying any settlement in the Securities Class Actions.

175.    As a direct and proximate result of the Individual Defendants' actions as alleged above, Spire Global, Inc.'s market capitalization has been substantially damaged, losing millions of dollars in value because of the conduct described herein.

176.    Lastly, the actions of the Individual Defendants have irreparably damaged Spire Global, Inc.'s corporate image and goodwill.

177.    For at least the foreseeable future, Spire Global, Inc. will suffer from what is known as the "liar's discount," a term applied to the stocks of companies that have been implicated in illegal behavior and have misled the investing public, such that Spire Global, Inc.'s ability to raise equity capital or debt on favorable terms in the future is now impaired.

### **CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

178.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing.

179.    The Individual Defendants caused Spire Global, Inc. to conceal the true facts as alleged herein.

180.    The Individual Defendants had actual knowledge of the underlying fiduciary duties of other Defendants.

181.    The Individual Defendants had actual knowledge of the breach of those fiduciary duties by other Defendants.

182.    The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

183.    The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct were, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment.

184.    The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct were, among other things, to conceal adverse information concerning Spire Global, Inc.'s operations, financial condition, future business prospects and internal controls.

185.    The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct were, among other things, to artificially inflate Spire Global, Inc.'s stock price.

186.    The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing Spire Global, Inc. purposefully, recklessly, or with gross negligence to engage in improper accounting methods, conceal material facts, fail to correct such misrepresentations, and violate applicable laws.

187.    In furtherance of this plan, conspiracy, and course of conduct, Individual Defendants collectively and individually took the actions set forth herein.

188.    The Individual Defendants described herein were direct, necessary, and substantial participants in the common enterprise, and/or common course of conduct complained here because the action described herein occurred under the authority and approval of the Board.

189.    Each of the Individual Defendants aided, abetted, and rendered substantial assistance in the wrongs complained of herein.

190.    In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in or substantially assisted the

accomplishment of that wrongdoing and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

191. At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and Spire Global, Inc. and was at all times acting within the course and scope of such agency.

## PLAINTIFF HAS BEEN A STOCKHOLDER SINCE THE ALLEGED WRONGDOING AND WILL FAIRLY AND ADEQUATELY REPRESENT THE COMPANY'S AND ITS STOCKHOLDERS' INTERESTS

192. Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

193. Plaintiff brings this action derivatively in the right and for the benefit of Spire Global, Inc. to redress the Individual Defendants' misconduct.

194. Plaintiff is an owner of Spire Global, Inc. common stock and has been an owner of Spire Global, Inc. common stock since the wrongdoing alleged herein.

195. Plaintiff has engaged counsel experienced in conducting derivative litigation and will adequately and fairly represent the interests of Spire Global, Inc. and its stockholders in enforcing and prosecuting the Company's rights.

## DEMAND IS FUTILE

**A.     Demand Is Futile Because Each Member of the Board Faces a Substantial Likelihood of Personal Liability**

196. At the time Plaintiff commenced this action, the Board consisted of the six Director Defendants: Defendants Amble, Condor, Hoke, Messer, Platzer, and Porteous.

197. The Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

198.    The Director Defendants all face a substantial likelihood of liability for their individual misconduct.

199.    The Director Defendants were directors throughout the time of the false and misleading statements and, as such, had a fiduciary duty to ensure the accuracy of Spire Global, Inc.'s SEC filings, press releases, and other public statements and presentations concerning Spire Global, Inc.'s business, operations, prospects, internal controls, and financial statements.

200.    Moreover, the Director Defendants owed and owe a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that Spire Global, Inc.'s internal controls were sufficiently robust and effective and were being implemented effectively, and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care.

201.    Instead, they knowingly and consciously reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused Spire Global, Inc.'s stock to trade at artificially inflated prices.

202.    The Director Defendants also approved the 2024 Proxy Statement and, therefore, face a substantial likelihood of personal liability because of the false and misleading statements contained therein.

203.    The Director Defendants face a substantial likelihood of personal liability because of their conscious and knowing authorization of false and misleading statements, their failure to timely correct such statements, their failure to take necessary and appropriate steps to ensure that Spire Global, Inc.'s internal controls were sufficiently robust and effective and were being implemented effectively, and their failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required diligence constitute

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

breaches of the fiduciary duties of loyalty and good faith, for which the Director Defendants face a substantial likelihood of liability.

204.    If the Director Defendants were to bring a suit on behalf of Spire Global, Inc. to recover damages sustained as a result of this misconduct, they would expose themselves to significant liability, and therefore Plaintiff making a demand would be futile.

**B.    The Audit Committee Defendants Face an Even Greater Likelihood of Personal Liability**

205.    The Audit Committee Defendants (Defendants Amble, Hoke, and Porteous), as members of the Audit Committee during the Relevant Period, participated in and knowingly approved the filing of false financial statements.

206.    More specifically, as members of the Audit Committee, the Audit Committee Defendants were obligated to review the Company's annual and quarterly reports to ensure their accuracy.

207.    Instead, the Audit Committee Defendants failed to ensure the integrity of Spire Global, Inc.'s financial statements and financial reporting process and its systems of internal accounting and financial controls and other financial information provided by the Company as required by the Audit Charter.

208.    For this reason, the Audit Committee Defendants cannot exercise disinterested business judgment in considering a demand.

**C.    Defendant Platzer Faces an Even Greater Likelihood of Personal Liability as a Defendant in the Securities Fraud Class Actions**

209.    Additionally, Defendant Platzer is a named defendant in the Securities Class Actions, which assert claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act as well as SEC Rule 10b-5 promulgated under the Exchange Act.

210.    If Spire Global, Inc. is found liable in the Securities Class Actions for these violations of the federal securities laws, the Company's liability will be in whole or in part due to Defendant Platzer's willful and/or reckless violations of their obligations as officers and directors of Spire Global, Inc.

211.    Hence, Defendant Platzer is incapable of considering a demand to commence and vigorously prosecute this action because he faces an even greater likelihood of personal liability than the rest of the Defendants.

**D.      Defendant Condor and Platzer Lack Independence**

212.    Defendants Condor and Platzer are not independent, and the 2024 Proxy Statement states as much.

213.    Defendants Platzer and Condor are husband and wife.

214.    As of March 31, 2024, Defendants Platzer and Condor jointly own 2,068,895 shares of Spire Global Class A common stock, worth $20,668,261 as of September 30, 2024, and constituting 8.2% of the Company's total outstanding shares.

215.    Defendants Platzer and Condor further own 69.9% of the Company's total shares of Class B common stock which, in conjunction with their holdings of Class A common stock, grants them 29.7% of the Company's total voting power.

216.    Defendants Condor and Platzer could not exercise independent and disinterested business judgment in considering a demand.

**FIRST CAUSE OF ACTION**
**Against the Individual Defendants for Breach of Fiduciary Duties**

217.    Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

218.     Each Individual Defendant owed to Spire Global, Inc. the duty to exercise candor, good faith, and loyalty in the management and administration of Spire Global, Inc.'s business and affairs.

219.     Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

220.     The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to Spire Global, Inc.

221.     The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Spire Global, Inc.

222.     In breach of their fiduciary duties owed and owe to Spire Global, Inc., the Individual Defendants willfully or recklessly made, or caused or permitted the Company to make, false and misleading statements and omissions of material fact that failed to disclose, *inter alia*,

       a.     Spire Global, Inc. had embedded leases of identifiable assets in certain service contracts;

       b.     Spire Global, Inc. lacked effective accounting controls and procedures to recognize revenues of pre-space mission activities;

       c.     Consequently, Spire Global, Inc. overstated its revenue for its Space as a Service business segment contracts; and thus,

       d.     Spire Global, Inc. failed to have adequate internal controls over financial reporting.

223.     Accordingly, Spire Global, Inc.'s public statements were materially false, misleading, and lacked a reasonable basis during the Relevant Period, thereby causing the stock to trade at artificially inflated prices.

224.     The Individual Defendants failed to and caused Spire Global, Inc. to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions

of material fact referenced herein, thereby, rendering themselves personally liable to the Company for breaching their fiduciary duties.

225.    The Individual Defendants also failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls in breach of their fiduciary duties.

226.    The Individual Defendants had actual or constructive knowledge that Spire Global, Inc. issued materially false and misleading statements, and they failed to correct the Company's public statements.

227.    The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard to the truth in that they failed to ascertain and disclose such facts even though such facts were available to them.

228.    Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Spire Global, Inc.'s securities.

229.    The Individual Defendants had actual or constructive knowledge that they had caused Spire Global, Inc. to improperly engage in the fraudulent schemes set forth herein and to fail to maintain adequate internal controls.

230.    The Individual Defendants had actual knowledge that Spire Global, Inc. was engaging in the fraudulent schemes set forth herein.

231.    The Individual Defendants had actual knowledge that internal controls were not adequately maintained or acted with reckless disregard for the truth in that they caused Spire Global, Inc. to improperly engage in the fraudulent schemes and to fail to maintain adequate internal controls, even though such facts were available to them.

232. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Spire Global, Inc.'s securities.

233. The Individual Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

234. These actions were obviously not a good-faith exercise of prudent business judgment to protect and promote Spire Global, Inc.'s corporate interests.

235. As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Spire Global, Inc. has sustained and continues to sustain significant damages.

236. As a result of the misconduct alleged herein, the Individual Defendants are liable to Spire Global, Inc.

**SECOND CAUSE OF ACTION**
**Against the Securities Class Action Defendants**
**for Contribution under Sections 10(b) and 21D of the Exchange Act and SEC Rule 10b-5**

237. Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

238. Spire Global, Inc. along with the Securities Class Action Defendants (Basola, Krywe, and Platzer) are named as defendants in at least one of the Securities Class Actions, which asserts claims under the federal securities laws for violations of Sections 10(b) and 21D of the Exchange Act and SEC Rule 10b-5.

239. If Spire Global, Inc. is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to the Securities Class Action Defendants' willful and/or reckless violations of their obligations as officers and/or directors of Spire Global, Inc.

240.     Because of their positions of control and authority as officers and/or directors of Spire Global, Inc., the Securities Class Action Defendants were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of Spire Global, Inc., including the wrongful acts complained of herein and in the Securities Class Action.

241.     Accordingly, the Securities Class Action Defendants are liable under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, which create an implied private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

242.     As such, Spire Global, Inc. is entitled to receive all appropriate contribution or indemnification from the Securities Class Action Defendants.

**THIRD CAUSE OF ACTION**
**Against the Individual Defendants for**
**Violations of § 14(a) of the Exchange Act and SEC Rule 14a-9**

243.     Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

244.     Rule 14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

245.     The 2023 Proxy Statement and 2024 Proxy Statement violated Section 14(a) and Rule 14a-9 because they solicited Spire Global, Inc. stockholder votes for, *inter alia*, director reelection, while simultaneously misrepresenting and/or failing to disclose the Company's shortcomings in connection with its internal controls for financial reporting.

246.    The Individual Defendants made untrue statements of material facts and omitted to state material facts necessary to make the statements that were made not misleading in violation of Section 14(a) and Rule 14a-9.

247.    By virtue of their positions within Spire Global, Inc. and roles in the process and in the preparation of the 2023 Proxy Statement and 2024 Proxy Statement, the Individual Defendants were aware of this information and of their duty to disclose this information in the 2023 Proxy Statement and 2024 Proxy Statement.

248.    The Individual Defendants knew that the statements contained in the 2023 Proxy Statement and 2024 Proxy Statement were materially false and misleading.

249.    The omissions and false and misleading statements in the 2023 Proxy Statement and 2024 Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the re-election of directors.

250.    Indeed, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the 2023 Proxy Statement and 2024 Proxy Statement and in other information reasonably available to stockholders.

251.    As a direct and proximate result of the dissemination of the false and misleading 2023 Proxy Statement and 2024 Proxy Statement that the Individual Defendants used to obtain stockholder approval of and thereby re-elect directors, nominal defendant Spire Global, Inc. suffered damage and actual economic losses (i.e., wrongful re-election of directors) in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
<u>**Against the Individual Defendants for Unjust Enrichment**</u>

252.    Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

253.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Spire Global, Inc.

254.    The Individual Defendants benefitted financially from the improper conduct, received unjustly lucrative bonuses tied to the false and misleading statements, and were given bonuses, stock options, or similar compensation from Spire Global, Inc. that was tied to the performance or artificially inflated valuation of Spire Global, Inc., or received compensation that was otherwise unjust in light of the Individual Defendants' bad faith conduct.

255.    Plaintiff, as a stockholder and representative of Spire Global, Inc., seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits—including from insider sales, benefits, and other compensation, including any performance-based or valuation-based compensation—obtained by the Individual Defendants from their wrongful conduct and breach of their fiduciary duties.

256.    Plaintiff, on behalf of Spire Global, Inc., has no adequate remedy at law.

## FIFTH CAUSE OF ACTION
### Against all the Individual Defendants for Aiding and Abetting

257.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

258.    Each of the Individual Defendants acted and is acting with knowledge of the fact that the Defendants are in breach of their fiduciary duties to Spire Global, Inc. and has participated in a conspiracy in breach of fiduciary duties.

259.    In committing the wrongful acts alleged herein, each of the Individual Defendants has pursued, or joined in the pursuit of, a common course of conduct.

260.    The Individual Defendants have acted in concert with and conspired with one another in furtherance of their common plan or design.

261.    In addition to pursuing the wrongful conduct that gives rise to their primary liability, the Individual Defendants also aided, abetted, and assisted each other in breaching their respective duties.

262.    The Individual Defendants collectively and individually initiated and followed a course of conduct that violated the federal securities laws; authorized corporate actions to serve their own personal interests rather than the interests of the Company and its stockholders; misrepresented material facts about the Company, its financial condition, and business prospects; prevented the disclosure of material information necessary to make statements complete and accurate; and failed to implement and maintain an adequate system of internal controls and corporate governance practices.

263.    The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and common course of conduct was, among other things, to disguise the Defendants' violations of law, including violations of the federal securities laws and breaches of fiduciary duty.

264.    Each of the Individual Defendants played a direct, necessary, and substantial part in the conspiracy, common enterprise, and common course of conduct complained of herein.

265.    Each of the Individual Defendants aided, abetted, and rendered substantial assistance in the wrongs complained of herein.

266.    In taking such actions to substantially assist the commission of the wrongdoing complained of herein, the Individual Defendants acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and were aware of their overall contributions to and furtherance of the wrongdoing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.      Declaring that Plaintiff may maintain this derivative action on behalf of Spire Global, Inc. and that Plaintiff is a proper and adequate representative of the Company;

B.      Awarding the amount of damages sustained by Spire Global, Inc. as a result of the Individual Defendants' breaches of fiduciary duties and violations of the federal securities laws;

C.      Awarding prejudgment interest to Spire Global, Inc.;

D.      Granting appropriate equitable relief to remedy Individual Defendants' breaches of fiduciary duties and other violations of law;

E.      Awarding to Spire Global, Inc. the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees and costs and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

## Jury Trial Demanded

Plaintiff hereby requests a trial by jury of this matter pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

CHARNOFF SIMPSON PLLC

_____/s/_____
Mikhael D. Charnoff, VSB. No 43929
CHARNOFF SIMPSON PLLC
111 Church Street NW, Suite 202 A
Vienna, VA 22180
(703) 291-6650
mike@charnoffsimpson.com

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

**VERIFICATION**

I, L. Robert Oros, declare that I have reviewed the Verified Stockholder Derivative Complaint ("Complaint") prepared on behalf of Spire Global, Inc., and authorize its filing. I have reviewed the allegations made in the Complaint, and as to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and, for that reason, believe them to be true. I further declare that I am a current holder of Spire Global, Inc. stock and have continuously held Spire Global, Inc. stock from the time of the wrongdoing alleged herein until the present. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11 day of November 2024.

L Robert Oros (Nov 11, 2024 14:57 EST)

L. Robert Oros